NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
CATHY J. OSTILLER (Cal. Bar No. 174582)
Senior Litigation Counsel
KAREN E. ESCALANTE (Cal. Bar No. 304686)
VICTOR A. RODGERS (Cal. Bar No. 101281)
Deputy Chief, Asset Forfeiture Section
Assistant United States Attorneys
Major Frauds/Asset Forfeiture Sections
     1100/1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6159/3358/2569
     Facsimile: (213) 894-6269/0142
     E-mail:    cathy.ostiller@usdoj.gov
                karen.escalante@usdoj.gov
                victor.rodgers@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 15-00474-PSG-9 |
|---|---|
| Plaintiff, | |
| v. | [SEALED DOCUMENT] |
| RICHARD MARK CIAMPA, | |
| Defendant. | |

FILED
CLERK, U.S. DISTRICT COURT

12/07/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: _____WH_____ DEPUTY

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
CATHY J. OSTILLER (Cal. Bar No. 174582)
Senior Litigation Counsel
KAREN E. ESCALANTE (Cal. Bar No. 304686)
VICTOR A. RODGERS (Cal. Bar No. 101281)
Deputy Chief, Asset Forfeiture Section
Assistant United States Attorneys
Major Frauds/Asset Forfeiture Sections
    1100/1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6159/3358/2569
    Facsimile: (213) 894-6269/0142
    E-mail:    cathy.ostiller@usdoj.gov
              karen.escalante@usdoj.gov
              victor.rodgers@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 15-00474(A)-PSG-9 |
|---|---|
|        Plaintiff, | PLEA AGREEMENT FOR DEFENDANT RICHARD MARK CIAMPA |
|           v. | |
| RICHARD MARK CIAMPA, | |
|        Defendant. | |

    1.    This constitutes the plea agreement between RICHARD MARK CIAMPA ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count thirteen of the First Superseding Indictment in <u>United States v. Richard Mark Ciampa, et al.</u>, CR No. 15-00474(A)-PSG, which charges defendant with Health Care Fraud in violation of 18 U.S.C. § 1347.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   At or before the time of sentencing, satisfy any and all restitution/fine obligations based on ability to pay by delivering a certified check or money order to the Fiscal Clerk of the Court in the amount of $2,500 (or a lesser amount as directed by the Court based on defendant's demonstration to the Court of his ability to pay), to be held until the date of sentencing and,

2

1  thereafter, applied to satisfy defendant's restitution/fine balance.
2  Payments may be made to the Clerk, United States District Court,
3  Fiscal Department, 255 East Temple Street, 11th Floor, Los Angeles,
4  California 90012.

5          i.   Ability to pay shall be assessed based on the
6  Financial Disclosure Statement, referenced below, and all other
7  relevant information relating to ability to pay.

8          j.   Defendant agrees that any and all restitution/fine
9  obligations ordered by the Court will be due in full and immediately.
10  The government is not precluded from pursuing, in excess of any
11  payment schedule set by the Court, any and all available remedies by
12  which to satisfy defendant's payment of the full financial
13  obligation, including referral to the Treasury Offset Program.

14          k.   Complete the Financial Disclosure Statement on a form
15  provided by the USAO and, within 30 days of defendant's entry of a
16  guilty plea, deliver the signed and dated statement, along with all
17  of the documents requested therein, to the USAO by either email at
18  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial
19  Litigation Section at 300 N. Los Angeles St., Suite 7516, Los
20  Angeles, CA 90012.

21          l.   Authorize the USAO to obtain a credit report upon
22  returning a signed copy of this plea agreement.

23          m.   Consent to the USAO inspecting and copying all of
24  defendant's financial documents and financial information held by the
25  United States Probation and Pretrial Services Office.

26      3.   Defendant agrees:

27          a.   That all court appearances, including his change of
28  plea hearing and sentencing hearing, may proceed by video-

teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by Order of the Chief Judge No. 20-097 or another order, rule, or statute. Defendant understands that, under the Constitution, the United States Code, the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), he may have the right to be physically present at these hearings. Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely. Defense counsel also joins in this consent, agreement, and waiver. Specifically, this agreement includes, but is not limited to, the following:

      i.  Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or telephone, if VTC is not reasonably available.

      ii.  Defendant consents under Section 15002(b) of the CARES Act to proceed with his sentencing hearing by VTC or telephone, if VTC is not reasonably available.

      iii. Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pre-trial release by VTC or telephone, if VTC is not reasonably available.

      b.  Not to commit any crime or any act constituting obstruction of justice; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

      4.  Defendant further agrees to:

a.    Immediately and irrevocably forfeit, on behalf of defendant and any entity in which defendant has held an ownership interest or has served as an officer, director, manager, partner, trustee, or other representative (which entities are collectively referred to herein as the "defendant entities" and include, without limitation, Atlantic Recovery Services and Atlantic Health Services) to the United States of America any and all interests of defendant and the defendant entities, and each of them, to the following items (collectively referred to herein as the "Forfeitable Property"), which Forfeitable Property defendant and the defendant entities, and each of them, agree (1) constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1347; and (2) shall, at the sole election of the United States of America, be criminally forfeited or civilly forfeited, administratively or judicially, pursuant to 18 U.S.C. § 981, 18 U.S.C. § 982, 28 U.S.C. § 2461, or otherwise:

i.    the Long Beach, California real property with Assessor Parcel Number 7273-002-007;

ii.   the Long Beach, California real property with Assessor Parcel Number 7273-002-009;

iii.  the Long Beach, California real property with Assessor Parcel Number 7240-005-014; and

iv.   the Long Beach, California real property with Assessor Parcel Number 7278-025-014.

b.    Deliver to the undersigned Assistant United States Attorneys, within fourteen (14) calendar days of defendant's execution of this plea agreement, a notarized release in the form of

Exhibit A, attached hereto, executed by Leslie McCasky-Ciampa, of her rights to contest the forfeiture of the Forfeitable Property.

        c.   Hereby withdraw, on behalf of defendant and the defendant entities, any claim or petition for remission defendant or the defendant entities submitted to any federal agency in any administrative forfeiture proceedings commenced by that agency with respect to the Forfeitable Property.  Defendant and the defendant entities, and each of them, further waive their respective rights, if any, to any further notice relative to the administrative forfeiture proceedings and understand, acknowledge, and agree that defendant and the defendant entities' interests in the Forfeitable Property shall be administratively forfeited to the United States of America without any further notice.

        d.   Refrain from contesting or seeking remission with respect to the Forfeitable Property (by filing a claim, statement of interest, petition for an ancillary proceeding, petition for remission, or otherwise, whether on defendant's own behalf or on behalf of any defendant entities) of the Forfeitable Property in any administrative or judicial proceeding, or assisting any other person or entity in falsely contesting the forfeiture of the Forfeitable Property in any administrative or judicial proceeding.

        e.   Take all steps necessary to pass to the United States of America clear title to the Forfeitable Property, including, without limitation, the execution of stipulations for the entry of consent judgments of forfeiture, consent directives, and the completion of any other legal documents required for the transfer of title to the Forfeitable Property to the United States of America.

f.   The Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the Forfeitable Property.  Defendant knowingly and voluntarily waives (i) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment; (ii) all constitutional and statutory challenges in any manner (including by direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this agreement on any grounds; and (iii) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant also acknowledges and understands that the forfeiture of the Forfeitable Property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Rule 11(b)(1)(J), at the time defendant's guilty plea is accepted.

g.   Forfeiture of the Forfeitable Property not being counted toward satisfaction of any (i) special assessment, fine, restitution, or any other penalty the Court may impose; or (ii) taxes, penalties, or interest owed to the Internal Revenue Service.  Notwithstanding the foregoing, provided that the requirements to make the recommendation for restoration are satisfied, the USAO agrees to recommend to the Money Laundering and Asset Recovery Section (the "MLARS") of the Department of Justice that the Forfeitable Property be applied via the restoration procedures to the satisfaction of any restitution that the Court may

impose in this case.  Defendant understands, acknowledges and agrees that, notwithstanding the USAO's recommendation, the USAO cannot guarantee that the MLARS will accept the USAO recommendation, as the USAO cannot bind the MLARS and the MLARS has the sole and exclusive authority to decide whether to grant restoration and thereby apply the Forfeitable Property to restitution.

5.    Defendant understands and acknowledges that as a result of pleading guilty pursuant to this agreement, defendant will be excluded from Medicare, Medicaid, and all Federal health care programs.  Defendant agrees to complete and execute all necessary documents provided by the United States Department of Health and Human Services, or any other department or agency of the federal government, to effectuate this exclusion within 60 days of receiving the documents.  This exclusion will not affect defendant's right to apply for and receive benefits as a beneficiary under any Federal health care program, including Medicare and Medicaid.

<u>THE USAO'S OBLIGATIONS</u>

6.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the remaining counts of the First Superseding Indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

1      d.    At the time of sentencing, provided that defendant

2  demonstrates an acceptance of responsibility for the offense up to

3  and including the time of sentencing, recommend a two-level reduction

4  in the applicable Sentencing Guidelines offense level, pursuant to

5  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

6  additional one-level reduction if available under that section.

7      e.    Should the Court sentence defendant to a term of

8  imprisonment, recommend that defendant not be required to self-

9  surrender to serve his sentence until on or after April 1, 2021,

10 unless defendant violates the conditions of his bond.

<u>NATURE OF THE OFFENSE</u>

12     7.    Defendant understands that for defendant to be guilty of

13 the crime charged in count thirteen, that is, Health Care Fraud, in

14 violation of Title 18, United States Code, Section 1347, the

15 following must be true:  1) defendant knowingly and willfully

16 executed a scheme or plan to defraud a health care benefit program or

17 obtain money or property owned by or under the custody or control of

18 a health care benefit program by means of material false or

19 fraudulent pretenses, representations, or promises; (2) defendant

20 acted with the intent to defraud; (3) Medi-Cal was a health care

21 benefit program; and (4) the scheme or plan was executed in

22 connection with the delivery of or payment for health care benefits,

23 items, or services.  The term "health care benefit program" means any

24 public or private plan or contract, affecting commerce, under which

25 any medical benefit, item, or service is provided to any individual,

26 and includes any individual or entity who is providing a medical

27 benefit, item, or service for which payment may be made under the

28 plan or contract.  Defendant acted knowingly if he was aware of a

high probability that Medi-Cal was being defrauded or that money or property owned by or under the custody or control of Medi-Cal was being obtained by means of material false or fraudulent pretenses, representations, or promises, and deliberately avoided learning the truth.  "Willfully" means that defendant committed the act voluntarily and purposefully, and with knowledge that the conduct was, in a general sense, unlawful.

PENALTIES AND RESTITUTION

8.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1347, is: ten years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The

parties agree that the applicable amount of restitution is at least approximately $84,000; the government currently believes that the applicable amount of restitution is, in fact, approximately $17,640,325.  The parties recognize and agree that the parties' approximations of the amount of restitution could change based on facts that come to the attention of the parties prior to sentencing.

10.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to mandatory exclusion from providing services paid for under a federal health care benefit program for a minimum of five years, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license.  Defendant understands that unanticipated

11

collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

12. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

13. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 15 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

1    In or about 1996, defendant founded Atlantic Recovery Services,
2    later called Atlantic Health Services ("ARS"), a non-profit public
3    benefit corporation located in Long Beach, California, that, among
4    other things, provided substance abuse treatment services to students
5    at high schools and middle schools in the Los Angeles area.
6    Defendant was the President and Chief Executive Officer of ARS.  ARS
7    operated until approximately mid-April 2013.

8    ARS purported to provide substance abuse treatment services to
9    students through Medi-Cal, a publicly funded health care benefit
10   program, affecting commerce, that provided coverage for medically
11   necessary services to income-eligible individuals in California.
12   Medi-Cal, and its Drug Medi-Cal program, generally receives 50% of
13   its funding from the State of California and 50% of its funding from
14   the Centers for Medicare and Medicaid Services ("CMS"), a federal
15   agency that is a component of the United States Department of Health
16   and Human Services, is located in Baltimore, Maryland, and has a
17   payment center located in Bethesda, Maryland.  Medi-Cal also provides
18   state-funded minor consent services to individuals under the age of
19   21 who wish to independently and confidentially receive certain
20   health care services, including alcohol and drug counseling, without
21   the consent of their parents.  In determining eligibility for minor
22   consent services, Medi-Cal and/or the relevant county agency excludes
23   parental income and resources from consideration, and minor consent
24   services do not qualify for Federal Financial Participation from CMS.
25   Minor consent services are reimbursed 100% with State General Funds.

26   ARS was certified by the State as a provider, but did not submit
27   billing directly to Drug Medi-Cal.  Rather, ARS contracted with the
28   County of Los Angeles' ("the County") Alcohol and Drug Program

13

1   Administration (later named the Substance Abuse Prevention and
2   Control) to provide services to students at high schools and middle
3   schools throughout the County.

4        Pursuant to this contractual relationship, ARS submitted claims
5   for reimbursement directly to the County.  The County, in turn,
6   processed the claims, paid ARS for eligible claims, and sought
7   reimbursement from Drug Medi-Cal.  Among other tasks, the County was
8   responsible for determining the Medi-Cal eligibility of students
9   serviced by ARS and staffed the school sites serviced by ARS with
10  County eligibility workers.

11       From March 2009 to mid-April 2013, defendant knowingly and
12  willfully participated in a scheme to defraud Medi-Cal in which
13  (1) ARS billed Medi-Cal's Drug Medi-Cal program through the County
14  for services to students who did not medically need alcohol or drug
15  treatment; (2) ARS billed Drug Medi-Cal through the County for group
16  and individual counseling sessions that were not provided or did not
17  meet the requirements for reimbursement; and (3) ARS employees
18  falsified documentation to support the false claims.

19       In March 2009, Drug Medi-Cal assessed a large overpayment
20  against ARS for Day Care Habilitative ("DCH") claims that ARS
21  previously submitted to Drug Medi-Cal through the County and that
22  Drug Medi-Cal reimbursed erroneously.  Specifically, Drug Medi-Cal
23  determined that minor consent services could not be rendered under
24  the DCH modality, which requires a three-hour counseling session, and
25  made that determination retroactive.  Drug Medi-Cal therefore
26  directed ARS to repay a portion of the amount of the overpayment, and
27  this financial obligation created a significant amount of pressure on
28  defendant.  Defendant, in turn, passed along this financial pressure

to his employees and threatened the employees that they would lose their jobs with ARS or have their hours reduced to part-time if they did not generate significant billings.  It was foreseeable to defendant that his threats would and did directly cause ARS employees to engage in fraudulent billing.

From March 2009 to mid-April 2013, defendant knew, or, at a minimum, was aware of a high probability, that, in response to his threats, ARS employees were generating false and fraudulent claims for submission to Drug Medi-Cal through the County, and thus, that Medi-Cal was being defrauded or that money or property owned by or under the custody or control of Medi-Cal was being obtained by means of material false or fraudulent pretenses, representations, or promises.  To the extent that defendant merely was aware of a high probability that ARS employees were engaging in fraud, he deliberately avoided learning the truth, and, therefore, defendant was willfully blind to the fraud that was occurring.  At all times during this period, defendant acted willfully and with the intent to defraud.

Defendant knew or was willfully blind to the fact that the fraud operated in the following ways:

a.   ARS counselors and managers maintained student caseloads by enrolling students in the ARS substance abuse counseling program even if they had used drugs or alcohol only occasionally or even just once;

b.   ARS counselors and managers collected students' signatures on sign-in sheets for counseling sessions, even if the students did not attend the counseling sessions;

        c.   ARS counselors and managers recorded times on sign-in sheets, Update Logs, and Progress Notes to make it appear that the students on each sign-in sheet were attending group counseling sessions at different times with no more than ten students at the same time;

        d.   ARS counselors and managers prepared Progress Notes and Update Logs that falsely showed that the students in the counselors and managers' caseloads had attended 90-minute group counseling sessions up to five days each week, even though the ARS counselors and managers were not meeting with students every day;

        e.   ARS counselors and managers completed paperwork and prepared Progress Notes and Update Logs that falsely showed that the counselors and managers had conducted 60-minute individual counseling sessions with students, including on days when the students in the counselors and managers' caseloads were absent from school or the counselors and managers were absent from work.

        f.   ARS counselors and managers were directed to have a one-on-one crisis session with every student twice a month, even though defendant knew that a crisis session was supposed to happen only when a student had a relapse or an "imminent threat" of relapse and could not be planned in advance; and

        g.   ARS counselors and managers billed for services conducted at unlicensed sites as if they had occurred at licensed sites to ensure payment from Medi-Cal.

    Defendant knew or was willfully blind to the fact that ARS would use the false Update Logs to generate claims for Drug Medi-Cal reimbursement for group and individual counseling sessions, and that the Progress Notes and falsified sign-in sheets would be maintained

1    in the students' files as documentation supporting those claims in

2    the event of a Medi-Cal audit.

3        Defendant made statements to ARS employees that encouraged them

4    to engage in fraud.  For example, in addition to the threats

5    described above, defendant (1) told ARS employees that they should

6    "find a way" to enroll more students in ARS' program despite his

7    awareness of Drug Medi-Cal's medical necessity requirements;

8    (2) suggested that ARS' billing should be higher because counselors

9    were physically present at the schools all day despite his awareness

10   of the schools' limitations on counselors' access to students;

11   (3) directed that ARS should bill for services performed at

12   unlicensed sites as if they had taken place at licensed sites;

13   (4) told co-defendant Gregory Hearns and others in ARS' billing

14   department how much defendant wanted ARS to bill Drug Medi-Cal

15   through the County each month; and (5) strongly encouraged counselors

16   to bill more individual crisis sessions on the basis that, given the

17   personal circumstances of the students who attended the schools where

18   ARS operated, the students were always "in crisis," even though

19   defendant knew individual crisis sessions could only be billed when a

20   student relapsed or was facing an imminent threat of a relapse.

21       In furtherance of the scheme, defendant knowingly and willfully

22   caused false and fraudulent claims, which he knew to be material to

23   reimbursement by Medi-Cal, to be submitted to the County by ARS,

24   including, in particular, the following claim:

25       In or about December 2011, ARS submitted a false and fraudulent

26   claim to the County for Medi-Cal reimbursement (Drug Medi-Cal claim

27   #A702847354), in the amount of $69.59 for an individual counseling

28   session for Soledad Enrichment Action ("SEA") Compton student J.R.

allegedly provided by ARS counselor and co-defendant Shyrie Womack on November 23, 2011, a school holiday, when the student was absent and Womack was not present at SEA Compton and did not provide any counseling.

During the period from March 2009 to mid-April 2013, ARS submitted to Drug Medi-Cal through the County claims totaling approximately $18,530,927 for counseling services purportedly provided to students by ARS counselors and managers, and Medi-Cal paid approximately $17,640,325 on those claims.  Of those claims, ARS billed approximately $17,681,056 for minor consent services that were reimbursed by Drug Medi-Cal solely with State General Funds in the approximate amount of $17,539,914.

<u>SENTENCING FACTORS</u>

14.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

15.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2B1.1(a)(2)] |
| Abuse of a Position of Trust/Use of Special Skill: | +2 | [U.S.S.G. § 3B1.3] |
| Aggravating Role (Leader/Organizer): | +4 | [U.S.S.G. § 3B1.1(a)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  In particular, with respect to loss, the parties agree that the loss was at least $84,000, and, therefore, at least a six-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(D) applies; the USAO reserves the right to argue that the intended loss was approximately $18,530,927 and that, therefore, a twenty-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(K) and a three-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(7)(ii) apply; and defendant reserves the right to argue that the intended loss amount is not higher than $84,000 and to object to any additional loss enhancements.

16.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).  For example, because the justice system is facing an unprecedented crisis through the backlog of cases, the parties agree that defendant is entitled to a two-level variance as recognition of defendant's early acceptance of responsibility, which will lessen the burden on the court system by: (1) waiving any right to presence and pleading guilty at the earliest

opportunity by VTC (or telephone, if VTC is not reasonably available); (2) waiving any right to presence and agreeing to be sentenced by VTC (or telephone, if VTC is not reasonably available) should the Central District of California's Order of the Chief Judge allow for it; (3) agreeing to appear at all other times by VTC or telephone; and (4) waiving all appellate rights.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

18.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### WAIVER OF APPEAL OF CONVICTION

19.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.   Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

20.   Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, provided it is no more than the high-end of the Sentencing Guidelines range calculated by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $17,640,325; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Amended General Order 20-04 of this Court;

the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

21. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, that newly discovered evidence purportedly supports defendant's innocence, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

22. The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $17,640,325.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

23. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result

22

of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

24. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

25. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

26. Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw

the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

27. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
OFFICE NOT PARTIES

28. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

29. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 15 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

30. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to

fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

31.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

1           PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2      32.   The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
7 CALIFORNIA

8 NICOLA T. HANNA
   United States Attorney

9

10                                12/4/2020
   CATHY J. OSTILLER              Date

11 KAREN E. ESCALANTE
   VICTOR A. RODGERS

12 Assistant United States Attorneys

13

14                                12/4/2020
   RICHARD MARK CIAMPA           Date

15 Defendant

16                               12/04/2020

17 REUVEN L. COHEN               Date
   JENNIFER M. RESNIK

18 ALYSSA D. BELL
   BRITTANY L. LANE

19 Attorneys for Defendant
   RICHARD MARK CIAMPA

20

21

22

23

24

25

26

27

28

                        27

1                    CERTIFICATION OF DEFENDANT

2        I have read this agreement in its entirety.  I have had enough

3   time to review and consider this agreement, and I have carefully and

4   thoroughly discussed every part of it with my attorney.  I understand

5   the terms of this agreement, and I voluntarily agree to those terms.

6   I have discussed the evidence with my attorney, and my attorney has

7   advised me of my rights, of possible pretrial motions that might be

8   filed, of possible defenses that might be asserted either prior to or

9   at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10  of relevant Sentencing Guidelines provisions, and of the consequences

11  of entering into this agreement.  No promises, inducements, or

12  representations of any kind have been made to me other than those

13  contained in this agreement.  No one has threatened or forced me in

14  any way to enter into this agreement.  I am satisfied with the

15  representation of my attorney in this matter, and I am pleading

16  guilty because I am guilty of the charge and wish to take advantage

17  of the promises set forth in this agreement, and not for any other

18  reason.

19

20  RICHARD MARK CIAMPA                    5/4/2020
    Defendant                             Date

21

22

23

24

25

26

27

28

1

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2       I am one of RICHARD MARK CIAMPA's attorneys.  I have carefully

3 and thoroughly discussed every part of this agreement with my client.

4 Further, I have fully advised my client of his rights, of possible

5 pretrial motions that might be filed, of possible defenses that might

6 be asserted either prior to or at trial, of the sentencing factors

7 set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8 provisions, and of the consequences of entering into this agreement.

9 To my knowledge: no promises, inducements, or representations of any

10 kind have been made to my client other than those contained in this

11 agreement; no one has threatened or forced my client in any way to

12 enter into this agreement; my client's decision to enter into this

13 agreement is an informed and voluntary one; and the factual basis set

14 forth in this agreement is sufficient to support my client's entry of

15 a guilty plea pursuant to this agreement.

16

17 REUVEN L. COHEN                              12/04/2020
JENNIFER M. RESNIK                           Date

18 ALYSSA D. BELL
BRITTANY L. LANE

19 Attorneys for Defendant
RICHARD MARK CIAMPA

20

21

22

23

24

25

26

27

28

1          <u>EXHIBIT A</u>

2     <u>WAIVER AND RELEASE OF CLAIMS TO CONTEST FORFEITURE</u>

3  I.    <u>INTRODUCTION</u>

4          1.    RICHARD MARK CIAMPA ("Defendant") has entered into a plea

5  agreement with the United States Attorney's Office for the Central

6  District of California.

7          2.    Defendant has agreed to forfeit to the United States of

8  America the following items (collectively, the "Forfeitable

9  Property"): (i) the Long Beach, California real property with

10 Assessor Parcel Number 7273-002-007; (ii) the Long Beach, California

11 real property with Assessor Parcel Number 7273-002-009; (iii) the

12 Long Beach, California real property with Assessor Parcel Number

13 7240-005-014; and (iv) the Long Beach, California real property with

14 Assessor Parcel Number 7278-025-014.

15         3.    Leslie McCasky-Ciampa is the wife of Defendant.

16 I.    <u>WAIVER AND RELEASE BY LESLIE MCCASKY-CIAMPA</u>

17         Leslie McCasky-Ciampa hereby knowingly, voluntarily, and

18 intelligently waives, relinquishes, and surrenders all rights to

19 contest the forfeiture of the Forfeitable Property, and all rights to

20 judicial review of the forfeiture of the Forfeitable Property.  In

21 addition, Leslie McCasky-Ciampa agrees to take all steps necessary to

22 pass to the United States of America clear title to the Forfeitable

23 Property.  To the extent that Leslie McCasky-Ciampa has already filed

24 one or more claims to contest the administrative or judicial

25 forfeiture of the Forfeitable Property, or has submitted a petition

26 for remission relative to the Forfeitable Property, this Waiver and

27 Release constitutes a complete withdrawal of such claims or petitions

28 for remission, and Leslie McCasky-Ciampa agrees and understands that

the Forfeitable Property shall be administratively or judicially
forfeited to the United States of America without any further notice
to Leslie McCasky-Ciampa.

_____         _____
Leslie McCasky-Ciampa                    Date

**CERTIFICATE OF SERVICE**

I, **T. Montes**, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**PLEA AGREEMENT**
**[UNDER SEAL]**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☒ By email, as follows:
Reuven Cohen –
rcohen@cohen-williams.com

Jennifer Resnik –
jresnik@cohen-williams.com

Alyssa Bell – abell@cohen-williams.com

Brittany Lane –
blane@cohen-williams.com

☐ By messenger, as follows:

☐ By Federal Express, as follows:

This Certificate is executed on **December 7, 2020**, at Los Angeles, California.   I certify under penalty of perjury that the foregoing is true and correct.

/s/
_____
**T. Montes**
Legal Assistant